UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION

| | |
|---|---|
| WACO HIPPODROME INC.,<br><br>PLAINTIFF,<br><br>v.<br><br>CENTRAL MUTUAL INSURANCE COMPANY D/B/A CENTRAL INSURANCE, THE TINES GROUP, INC., AND NATIONAL INFORMATION AND COMMUNICATIONS EQUIPMENT NETWORK, INC. D/B/A NICE NETWORK, INC.,<br><br>DEFENDANTS. | §§§§§§§§§§§§§§§§ CIVIL NO. 6:22-cv-349 |

**PLAINTIFF'S ORIGINAL COMPLAINT**

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW **WACO HIPPODROME, INC.** ("Plaintiff" or "Waco Hippodrome") complaining of **CENTRAL MUTUAL INSURANCE COMPANY** ("Central Insurance"), **THE TINES GROUP, INC.** ("Tines"), and **NATIONAL INFORMATION AND COMMUNICATIONS EQUIPMENT NETWORK, INC. D/B/A NICE NETWORK, INC.** ("Nice Network")(collectively, "Defendants") and files this PLAINTIFF'S ORIGINAL COMPLAINT and in furtherance thereof would respectfully show unto the Court as follows:

**I.**
**PARTIES**

1. Plaintiff is a Texas company with its principal place of business in McLennan County, Texas.

2. Defendant Central Mutual Insurance Company is a company incorporated in the State

of Ohio with its principal place of business at 800 S. Washington Street, Van Wert, Ohio 45891-2357 that may be served through its registered agent in the state of Texas, Corporate Creations Network, Inc., 5444 Westheimer Road, Suite 1000, Houston, Texas 77056-5318.

3. Defendant Tines is a corporation incorporated in the State of Kansas that may be served through its President and registered agent, David M. Tines, at 20504 W. 98th Place, Lenexa, Kansas 66220.

4. Defendant Nice Network is a corporation incorporated in the State of Kentucky that may be served through its registered agent in Texas, Capital Corporate Services, Inc., at 206 E. 9th Street, Suite 1300, Austin, Texas 78701-4411.

## II.
## JURISDICTION & VENUE

5. This Court has jurisdiction over the matter under 28 U.S.C. § 1332(a)(1) because the amount in controversy exceeds seventy-five thousand dollars ($75,000) and because Plaintiff is a citizen of Texas and Defendants Central Insurance, Tines, and Nice Network are citizens of a different state.

6. Venue is proper in the Western District of Texas under 28 U.S.C. § 1391(a)(2) because it is the District in which all or a substantial part of the events or omissions giving rise to the claim occurred and/or where a substantial part of the property at issue is situated.

## III.
## BACKGROUND FACTS

7. Central Insurance is a property and casualty insurance company that sells insurance policies to individuals and businesses in twenty-four (24) states, including the state of Texas.

8. Central Insurance purports to provide "***the best insurance coverage possible at a reasonable cost.***"

9. Bailey Insurance and Risk Management, Inc. ("Bailey") is an insurance agency that

regularly provides advice to commercial businesses concerning the purchase of commercial insurance policies, including property and casualty policies, and who regularly sells property and casualty policies to the same.

10. Bailey advertises that it offers insurance expertise to its clients and that business owners regularly rely on Bailey's advice.

11. Tines manages large construction and disaster restoration projects throughout the United States, including the state of Texas.

12. Tines maintains an office in Dallas, Texas.

13. Tines purports to work closely with the insurance carriers and their insureds to find the best and most efficient solutions when claims arise.

14. Tines claims to have "*invaluable experience and expertise in commercial property damage assessment and loss evaluation.*"

15. Tines also claims to "*understand the urgency of commercial claims and the need for knowledgeable consultants to quickly assess and recommend next steps for property restoration,*" including without limitation, "*evaluat[ing] emergency mitigation efforts,*" "*defin[ing] scope of damage and proper repair methods,*" "*prepar[ing] budget estimates for work associated with the loss,*" "*address[ing] potential code upgrade requirements,*" and "*procur[ing] and qualify[ing] repair bids from all trades associated with the loss.*"

16. At all times relevant, Tines acted as the agent of Central Insurance and spoke on behalf of the same.

17. Nice Network claims to provide prompt response to the evaluation needs of high value equipment losses, including providing timely research and communications to expedite the verification and documentation of equipment claims.

18. Nice Network claims to have the "*expertise to evaluate a variety of losses from a*

*single computer to a large inventory of business and/or industrial equipment,*" including without limitation, "*computers, networking equipment, copiers and office equipment, software and data/media, broadcast television and radio equipment, professional audio/video and print equipment, and HVAC, energy management and automated control systems.*"

19. Although Nice Network is typically hired by insurers, Nice claims to have "*no conflict of interest regarding the claim and will provide objective assessment of the scope of loss and reasonable repair/replacement options.*"

20. In or around November 2019, Waco Hippodrome, Inc. ("Waco Hippodrome") approached Bailey about needing property and casualty insurance for its Waco Hippodrome facility in downtown Waco.[1]

21. Bailey recommended and sold Waco Hippodrome a property and casualty policy insured by Central Insurance (the "2019 Central Policy").

22. Central Insurance advertised its policies as having certain equipment breakdown coverage that helps protect the insured from costs associated with losses to facility's equipment, covering, among other things, "*damage beyond proof of physical damage,*" "*loss of value of spoiled products,*" "*business income loss,*" "*service interruption,*" "*data restoration,*" "*off premises equipment,*" "*public relations*" to fix damaged reputation, "*undetectable*" physical damage, "*financial damage stemming from insured equipment breakdown,*" "*short circuits/electrical arching,*" "*power surges,*" "*boiler damage,*" "*operator error,*" and "*electronic circuitry impairment.*" Central Insurance marketing material acknowledges that "**the loss of power can mean the loss of income and customers,**" and "**since the panels, circuit breakers, and cables in your power distribution are all interconnected, a short circuit in one**

---

[1] The Waco Hippodrome is a large live entertainment venue and theater located in historic downtown Waco, Texas which acts as, among other things, a live concert venue, historic movie theater and special events center.

part can spread instantly to other parts of the system."

23. Central Insurance also advertises that "*every Central policy is backed by our Loss Control and Claims services… Central's loss control consultants are available to help you protect your business and profits…if you ever experience a claim, Central's Claims representatives will provide prompt, fair claims handling.*"

24. As Bailey explained to Waco Hippodrome, the 2019 Central Policy premiums were based upon Waco Hippodrome's level of business activity at the time the 2019 policy was issued.

25. In or around November 2020, the 2019 Central Policy was set to expire, and therefore, Bailey and/or Central Insurance encouraged Waco Hippodrome to renew their Central Insurance policy.

26. In the middle of the COVID-19 pandemic, Waco Hippodrome suggested to Bailey and/or Central that if it were to renew the Central Insurance Policy, the new policy premiums should be based upon its current level of business activity (which had been depressed as a result of the on-going pandemic and governmental restrictions relating to the same). Bailey and/or Central Insurance refused, instead insisting that 2020 policy premium should continue to reflect pre-pandemic business activity since the pandemic was, in theory, temporary and expected to subside.

27. Ultimately, Bailey recommended that Waco Hippodrome renew its 2019 Central Policy with Central Insurance, despite Waco Hippodrome's stated concerns. At all times, Waco Hippodrome relied upon the advice and expertise of Bailey and Bailey's understanding of its business and property.

28. On or about November 4, 2020, Bailey and/or Central Insurance sold a renewal insurance policy (Policy No. CLP 966050 17 and referred to as the "2020 Central Policy") to Waco Hippodrome, with the policy premiums being based upon Waco Hippodrome's pre-pandemic business activity. The 2020 Central Policy included special endorsements, including the GL Plus

Endorsement and GL Plus Enhancement, which included coverages for, among other things, business interruption and electronic equipment failure.

29. In February 2021, several severe winter storms swept through Central Texas causing historically low temperatures. Beginning on or about February 15, 2021 and culminating on February 18, 2021, multiple pipes burst in the Waco Hippodrome Building causing widespread flooding throughout its facility as a result of the winter storm (the "event" or the "winter storm event").

30. Waco Hippodrome immediately contacted local contractors to carry out emergency repairs and to attempt to mitigate the damages, but the damage caused to the Waco Hippodrome Building, personal property, fixtures and business was catastrophic.

31. Shortly following the event, Waco Hippodrome made a claim with Bailey and/or Central Insurance on its 2020 Central Policy for the damages caused by the winter storm event.

32. Central Insurance did **not** deny coverage under the 2020 Central Policy.

33. Instead, in response to Waco Hippodrome's claim on the 2020 Central Policy, Central Insurance significantly delayed payment, actively attempted to depress and/or unlawfully discount Waco Hippodrome's damages, and/or failed or refused to pay altogether.

34. Central Insurance sent its agents, including Tines and Nice Network representatives, to purportedly evaluate damages to the Waco Hippodrome from the winter storm event.

35. Tines and/or Nice Network repeatedly represented to Waco Hippodrome that Tines and/or Nice Network were impartial, acting in the best interest of Waco Hippodrome.

36. Nonetheless, Central Insurance, Tines, and/or Nice Network failed or refused to conduct proper inspections of the Waco Hippodrome facility, even refusing to go into certain parts of the building.

37. Inspectors acting on behalf of Central Insurance, Tines and/or Nice Network didn't even have the equipment necessary for conducting inspections to the damaged parts of the property.

38. Inspectors acting on behalf of Central Insurance, Tines and/or Nice Network didn't even inspect all the damaged property and/or equipment.

39. Since February 22, 2021, Central Insurance and/or its agents have inspected the Waco Hippodrome's real and personal property **on at least four (4) occasions** – February 24, 2021, April 28, 2021, January 12, 2022, and February 8, 2022.

40. The January 12, 2022 and February 8, 2022 inspections only came after Waco Hippodrome sent Central Insurance and its agents a demand for payment on October 5, 2021, pursuant to Sections 541.154 and 542A of the TEXAS INSURANCE CODE and Section 17.01 et. seq. of the TEXAS BUSINESS AND COMMERCE CODE.

41. Since October 5, 2021, Central Insurance has made no specific requests for additional information or clarification by Waco Hippodrome of the claims made in the October 5, 2021 demand letter.

42. Instead, Central Insurance requested and coordinated a re-inspection under Texas Insurance Code 542A.004, which Waco Hippodrome fully complied with on January 12, 2022. Waco Hippodrome opened its doors to the entirety of its facilities and graciously allowed Central Insurance over eight (8) hours for the statutory re-inspection.

43. While the January 12, 2022 statutory re-inspection wholly satisfied Waco Hippodrome's obligations under the statute and the 2020 Policy, Central Insurance thereafter requested an additional re-inspection of the "theater chair call service" to be held on February 8, 2022.

44. Despite having no legal duty or obligation, Waco Hippodrome agreed to again open its property to a fourth (4th) inspection by Central Insurance on February 8, 2022.

45. On or about February 14, 2022, Waco Hippodrome notified Central Insurance that it had fully cooperated with Central Insurance's inspection and re-inspection requests, and that the prior

four (4) inspections by Central Insurance and its agents should have allowed Central Insurance to fully investigate and settle Waco Hippodrome's claims.

46. However, despite the passage of over thirteen (13) months and multiple inspections allowed by Waco Hippodrome, Central Insurance's response was that Waco Hippodrome's refusal to allow **<u>even more</u>** multiple additional inspections **<u>constituted Waco Hippodrome's breach of the 2020 Policy</u>** and **<u>prevented Central Insurance from completing its investigation and adjustment of the claim</u>**.

47. Central Insurance, Tines, and/or Nice Network still contend that they have not fully inspected the damage done to Waco Hippodrome's real and personal property.

48. Central Insurance, Tines, and/or Nice Network have had ample opportunities to investigate and settle Waco Hippodrome's claims but have continued to fail and refuse to pay the claims in good faith despite Central Insurance's liability being reasonably clear. At the very least, the full-day inspection on January 12, 2022 and the several hour inspection on February 8, 2022 have revealed claimed damages for which Central Insurance has not paid, but Central Insurance continues to withhold and delay payment. Central Insurance's approach is to avoid additional payment and to delay by whatever means necessary.

49. Central Insurance, Tines, and/or Nice Network, on information and belief, have engaged in written and oral communications among one another intended to deprive Waco Hippodrome from benefits under the 2020 Central Policy and/or concerning the inadequate and incomplete inspections, evaluations, and payments under the same.

50. As a result of the event, the Waco Hippodrome's A/C system, including its boiler and/or cooling system, was damaged substantially.

51. Also, as a result of the event, theater walls, floors, and furniture, including numerous luxury recliners and other furniture, were soaked and required (and continue to require) substantial

remediation and/or replacement.

52. Also as a result of the event, Waco Hippodrome's state-of-the-art electronics were severely damaged, ruined, and/or rendered no longer reliable for commercial use, including at least seven (7) digital camera projectors.

53. Also as a result of the event, Waco Hippodrome's CCTV security system and in-theater audio systems were substantially damaged and require replacement.

54. Also as a result of the event, Waco Hippodrome's electronic marquee sign system was substantially damaged and/or rendered inoperable.

55. Also as a result of the event, Waco Hippodrome's business operation was substantially interrupted, causing a loss of income which continues to the present date.

56. Also as a result of the event, Waco Hippodrome was forced to employ several persons to attempt to mitigate the damages and perform and/or oversee remedial repairs, thus costing Waco Hippodrome additional out-of-pocket expenses.

57. Waco Hippodrome's damages resulting from the event are substantial and continue to accrue each and every day.

58. Central Insurance, Tines and/or Nice Network's delay of payment and/or attempts to depress and/or discount Waco Hippodrome's damages has only made the situation worse, increasing Waco Hippodrome's damages.

59. In addition, when making a claim for business interruption and/or loss of income under the 2020 Central Insurance Policy, Bailey and/or Central cherry-picked months during the pandemic (i.e. when the Waco Hippodrome was shut down by state law) to evaluate the loss of income, despite insisting that premiums for the 2020 Central Policy be based upon pre-pandemic income.

60. Despite Waco Hippodrome's valid claim for benefits under the 2020 Central Policy,

Central Insurance, and its agents acting on behalf of the same, have refused to honor the 2020 Central Policy and the representations made by Bailey and/or Central Insurance about the Policy have proven false, and therefore, Waco Hippodrome has no choice but to file this suit.

## IV.
### BREACH OF CONTRACT

61. Plaintiff hereby incorporates all preceding paragraphs and further alleges as follows.

62. On or about November 4, 2020, Plaintiff Waco Hippodrome and Defendant Central Insurance executed the 2020 Central Policy, a valid and enforceable written contract of insurance.

63. The 2020 Central Policy generally provided that Central Insurance would insure Waco Hippodrome's real and personal property, including its on-going business activities, from loss in exchange for payment of monthly and/or annual premiums by Plaintiff.

64. Waco Hippodrome fully performed its contractual obligations under the 2020 Central Policy.

65. Central Insurance breached the 2020 Central Policy by, among other things, wrongfully delaying payment and/or grossly underpaying Waco Hippodrome's claim for damages under the 2020 Central Policy.

66. Central Insurance also breached the 2020 Central Policy by, among other things, failing or refusing to perform complete inspections of Waco Hippodrome's real and personal property damages and/or losses.

67. Central Insurance's breach(es) of the 2020 Central Policy caused injury to Waco Hippodrome, which resulted in substantial and ongoing damages.

68. Waco Hippodrome is entitled to recover reasonable and necessary attorney's fees under TEX. CIV. PRAC. & REM. CODE § 38 because this is a suit for breach of a written contract.

## V.
## VIOLATIONS OF THE TEXAS DECEPTIVE TRADE PRACTICES ACT (DTPA)

69. Plaintiff hereby incorporates all preceding paragraphs and further alleges as follows.

70. Waco Hippodrome is a consumer under the Texas Deceptive Trade Practices – Consumer Protection Act (DTPA), as defined by TEX. BUS. & COM. CODE § 17.45, because Plaintiff is a corporation in the State of Texas that sought and/or acquired goods and/or services by purchase.

71. Central Insurance, Tines, and/or Nice Network are corporations that can be sued under the DTPA.

72. Central Insurance, Tines, and/or Nice Network violated TEX. BUS. & COM. CODE § 17.41 et seq. (the DTPA) in one or more of the following ways:

   a. Engaged in false, misleading, or deceptive acts or practices that Plaintiff relied upon to Plaintiff's own detriment;

   b. Breached an express or implied warranty;

   c. Engaged in an unconscionable action or course of action that, to Plaintiff's detriment, took advantage of Plaintiff's lack of knowledge, ability, experience, or capacity to a grossly unfair degree; and

   d. Used or employed an act or practice in violation of Texas Insurance Code Chapter 541.

73. Waco Hippodrome gave Central Insurance, Tines, and/or Nice Network notice as required by TEX. BUS. & COM. CODE § 17.505(a).

74. Central Insurance, Tines, and/or Nice Network's wrongful conduct was a producing cause of Waco Hippodrome's injury, which resulted in, among other things, the following damages:

   a. The cost to repair and/or replace damaged portions of the building structure and interior;

   b. The cost to replace damaged theater furniture and supporting systems;

   c. The cost to replace cinema projectors and projection booths and related electronics;

   d. The cost to replace the building's CCTV security system;

    e.   The cost of AC repairs and/or replacements;

    f.   The cost to repair and/or replace damaged speakers, speaker systems, A/V equipment and other related electronics;

    g.   The cost to repair and/or replace damaged or inoperable electronic marquee sign and related electronics;

    h.   Lost business income and/or business interruption loss; and

    i.   The cost of labor related to repairs, replacements and mitigation of damages.

75. Central Insurance, Tines, and/or Nice Network acted knowingly and/or intentionally, which entitles Waco Hippodrome to recover treble damages.

76. Waco Hippodrome is entitled to recover reasonable and necessary attorney's fees for prosecuting this suit under TEX. BUS. & COMM. CODE § 17.50(d).

## VI.
## VIOLATIONS OF THE TEXAS INSURANCE CODE

77. Plaintiff hereby incorporates all preceding paragraphs and further alleges as follows.

78. Central Insurance is a person, as defined by the TEX. INSURANCE CODE § 541.002(2) and made subject to Chapter 541 et seq. of the Texas Insurance Code.

79. In Texas, insurance companies and agencies are prohibited from engaging in practices which are defined or considered unfair or deceptive in nature. TEX. INSURANCE CODE § 541.003.

80. Central Insurance violated TEX. INSURANCE CODE § 541.060 in one or more of the following ways:

    a.   Misrepresenting to Plaintiff a material fact or policy provision relating to coverage at issue;

    b.   Failing to attempt in good faith to effectuate a prompt, fair, and equitable settlement of a claim which respect to which Defendant's liability has become reasonably clear and/or a claim under one or more portions of the 2020 Central Policy with respect to which Defendant's liability has become reasonably clear;

    c.   Failing to promptly provide to Plaintiff a reasonable explanation of the basis in

       the 2020 Central Policy, in relation to the facts or applicable law, for Defendant's denial of a claim or offer of a compromise settlement of a claim;

   d. Failing within a reasonable time to:

      i. Affirm or deny coverage of a claim to Plaintiff; or

      ii. Submit a reservation of rights to Plaintiff.

   e. Refusing to pay a claim without conducting a reasonable investigation with respect to the claim; and

   f. Failing or refusing to perform a reasonable investigation of the claim.

81. Central Insurance also violated TEX. INSURANCE CODE § 541.061 in one or more of the following ways:

   a. Making an untrue statement of material fact;

   b. Failing to state a material fact necessary to make other statements made not misleading, considering the circumstances under which the statements were made; or

   c. Making a statement in a manner that would mislead a reasonably prudent person to a false conclusion of a material fact.

82. Central Insurance also violated TEX. INSURANCE CODE § 542.051, et seq. by failing to meet the deadlines set forth in Section 542.051 et seq. after Central Insurance's liability became reasonably clear and after obtaining all information necessary to evaluate the claim.

83. Waco Hippodrome gave Central Insurance notice of a claim under TEX. INSURANCE CODE § 542A.003.

84. Central Insurance's wrongful conduct, in violation of the foregoing statutes, was a producing cause of Plaintiff's injury and/or damages.

85. Waco Hippodrome is entitled to recover reasonable and necessary attorney's fees for prosecuting this suit under TEX. INSURANCE CODE § 541.542.

## VII.
## NEGLIGENCE

86. Plaintiff hereby incorporates all preceding paragraphs and further alleges as follows.

87. Companies that claim to have expertise in the inspection and evaluation of property damage losses and who offer their services to inspect and evaluate property damage losses must use reasonable care to do so.

88. Defendant Tines claims to have special training and/or expertise in the evaluation of real and personal property losses.

89. Although often hired by insurance carriers, Defendant Tines claims to the public to be impartial when performing an inspection and/or evaluation of real and personal property losses.

90. Defendant Nice Network claims to have special training and/or expertise in the evaluation of equipment and electronic losses and/or failures.

91. Also often hired by insurance carriers, Defendant Nice Network also claims to the public to be impartial when performing an inspection and/or evaluation of equipment losses.

92. When companies are hired to inspect and evaluate losses subject to an insurance claim, the companies have a responsibility to perform a reasonable and complete inspection and to bring the necessary equipment for performing a complete inspection of the losses.

93. Defendant Tines performed an incomplete and unreasonable inspection of the Waco Hippodrome's real and personal property losses resulting from the winter storm event.

94. Defendant Nice Network also performed an incomplete and unreasonable inspection of the Waco Hippodrome's equipment losses.

95. Defendants Tines and/or Nice Network had a duty to exercise a degree of care that a reasonably careful person with their respective expertise would use when performing inspections of Waco Hippodrome's real property, personal property and equipment losses from the winter storm event.

96. The negligent, careless and reckless disregard of duty of Defendants Tines and/or Nice Network consisted of, but is not limited to, the following acts or omissions:

    a.    Failing to timely, properly and completely inspect and evaluate the losses to real property;

    b.    Failing to timely, properly and completely inspect and evaluate losses to personal property;

    c.    Failing to timely, properly and completely inspect and evaluate losses to equipment;

    d.    Failing or refusing to inspect all losses;

    e.    Failing to be prepared or equipped to inspect all losses while at the Waco Hippodrome;

    f.    Failing to provide its employees with the equipment or instrumentalities necessary to timely, properly and completely inspect and evaluate losses;

    g.    Failing to provide a reasonable evaluation and/or estimate of Waco Hippodrome's real property losses;

    h.    Failing to provide a reasonable evaluation and/or estimate of Waco Hippodrome's personal property losses; and

    i.    Failing to provide a reasonable evaluation and/or estimate of Waco Hippodrome's equipment losses.

97. Each of the foregoing acts and omissions by Defendants Tines and/or Nice Network, singularly or in combination with others, constitutes affirmative and ongoing negligent activity which contemporaneously and proximately caused damages suffered by Waco Hippodrome.

## VIII.
## NEGLIGENT MISREPRESENTATION

98. Plaintiff hereby incorporates all preceding paragraphs and further alleges as follows.

99. Defendants Tines and/or Nice Network represented to Waco Hippodrome and the public that Tines and/or Nice Network have special training and/or expertise in, among other things, commercial property damage assessment and loss evaluation and in the evaluation of losses concerning computers, networking equipment, copiers and office equipment, software and data/media, broadcast television and radio equipment, professional audio/video and print equipment

and HVAC, energy management and automated control systems.

100. Defendants Tines and/or Nice Network also represented to Waco Hippodrome that Tines and/or Nice Network were impartial, had no conflict of interest, and were evaluating personal and real property losses relating to the winter storm event on behalf of Waco Hippodrome and for the benefit of Waco Hippodrome.

101. Defendant Tines and/or Nice Network also made representations to Waco Hippodrome and Central Insurance concerning the value and extent of real and personal property losses resulting from the winter storm event.

102. Defendants Tines and/or Nice Network made these, and related, representations in the course of their businesses.

103. Defendants Tines and/or Nice Network made these, and related, representations in the course of a transaction in which Defendants had a pecuniary interest.

104. Defendants Tines and/or Nice Network made these representations for the guidance of others, including Waco Hippodrome.

105. The representations made by Defendants Tines and/or Nice Network were misstatements of fact.

106. Defendants Tines and/or Nice Network also failed to disclose information concerning its inspection of Waco Hippodrome's real and personal property losses from the winter storm event when it had a duty to do so.

107. Defendants Tines and/or Nice Network failed to use reasonable care in obtaining and/or communicating the information contained in one or more of its representations to Waco Hippodrome, including without limitation information concerning the real and personal property losses (and value of losses) resulting from the winter storm event.

108. Waco Hippodrome, and its agents, actually and justifiably relied upon representations

made by Defendants Tines and/or Nice Network by permitting Tines and/or Nice Network to inspect the real and personal property losses resulting from the winter storm event and by relying upon reports and/or evaluations and estimates of the subject losses and/or damages.

109. Waco Hippodrome, and its agents, also actually and justifiably relied upon the representations made by Defendants Tines and/or Nice Network by acting upon Tines and/or Nice Network's advice concerning the inspection, evaluation and estimates of the real and personal property losses resulting from the winter storm event.

110. Defendants Tines and Nice Network's misrepresentations proximately caused injury to Waco Hippodrome, including without limitation business interruption losses, additional repair and/or replacement estimates, and additional evaluation of losses.

## IX.
## VICARIOUS LIABILITY AND RESPONDEAT SUPERIOR

111. Plaintiff hereby incorporates all preceding paragraphs and further alleges as follows.

112. Defendants are liable for the wrongful actions and omissions of their current and former employees and agents under Texas law and should be held liable for every act and omission of the same and any and all damages resulting therefrom.

113. Defendant Central Insurance is liable for the wrongful actions and omissions, if any, of Tines and Nice Network, including their employees, as its agent under Texas law and all damages resulting therefrom.

## X.
## DAMAGES

114. As a direct result of the occurrence made the basis of this lawsuit, Plaintiff was caused to suffer and to incur the following damages:

    a. The cost to repair and/or replace damaged portions of the building structure and interior;

    b. The cost to replace damaged theater furniture, personal property and supporting

      systems;

    c. The cost to replace cinema projectors and projection booths and related electronics;

    d. The cost to replace the building's CCTV security system and related electronics and wiring;

    e. The cost of AC repairs and/or replacements and related electronics, wiring and piping systems;

    f. The cost to repair and/or replace damaged speakers, speaker systems, A/V equipment and other related electronics;

    g. The cost to repair and/or replace the electronic marquee sign and related electronics;

    h. Lost business income and/or business interruption loss;

    i. The cost of labor related to repairs, replacements and mitigation of damages; and

    j. Reasonable and necessary attorney's fees.

115. Central Insurance, Tines and/or Nice Network's acts and omissions described above were committed knowingly and/or intentionally, entitling Waco Hippodrome to treble damages.

116. To the extent a reasonable inspection reveals additional damages to the Waco Hippodrome as a result of the winter storm event or as a result of Defendants acts or omissions, Plaintiff is entitled to recover any additional, actual or consequential damages related to the same.

## XI.
## JURY DEMAND

117. Plaintiff demands a jury trial and tenders the appropriate fee with this its Original Complaint.

## XII.
## CONDITIONS PRECEDENT

118. All conditions precedent have been performed or have occurred as required by FED. R. CIV. P. 9.

## XIII.
## PRAYER

WHEREFORE, PREMISES CONSIDERED, Plaintiff respectfully requests that Defendants be cited to answer and appear herein and that upon final hearing of the cause, judgment be entered for Plaintiff against Defendants for the following:

a. Economic and/or actual damages;

b. Treble damages;

c. Prejudgment and post-judgment interest;

d. Court costs;

e. Attorney's fees; and

f. All other relief to which Plaintiff is entitled.

Respectfully submitted,

**JOHNSON HOBBS SQUIRES, LLP**

/s/ Scott H. James

_____

Ryan C. Johnson
State Bar No. 24048574
Scott H. James
State Bar No. 24037848
Aaron M. Wilkerson
State Bar No. 24047104
The Roosevelt Tower
400 Austin Avenue, Suite 903
Waco, Texas 76701
(254) 732-2242
(866) 627-3509 (Facsimile)
rjohnson@jhsfirm.com
sjames@jhsfirm.com
awilkerson@jhsfirm.com
www.jhsfirm.com

**ATTORNEYS FOR PLAINTIFF**