UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION

| | | |
|---|---|---|
| WACO HIPPODROME INC., | § | |
| | § | |
| PLAINTIFF, | § | |
| | § | |
| v. | § | CIVIL NO. 6:22-cv-349 |
| | § | |
| CENTRAL MUTUAL INSURANCE | § | |
| COMPANY D/B/A CENTRAL | § | |
| INSURANCE, THE TINES GROUP, INC., | § | |
| AND NATIONAL INFORMATION AND | § | |
| COMMUNICATIONS EQUIPMENT | § | |
| NETWORK, INC. D/B/A NICE | § | |
| NETWORK, INC., | § | |
| | § | |
| DEFENDANTS. | § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATIONS
OF THE UNITED STATES MAGISTRATE JUDGE**

On April 1, 2022, Plaintiff ("Plaintiff" or "Hippodrome") filed its Original Complaint against, among others, Defendant Central Mutual Insurance Company d/b/a Central Insurance ("Defendant" or "Central")(collectively, the "Parties"). *See* ECF No. 1. On April 6, 2022, the United States District Judge Alan Albright issued an Internal Docket Management Order which referred the case and related briefing to the undersigned for determination and/or recommendation. *See* ECF No. 6. On August 8, 2022, Defendant Central filed a Motion to Preclude Attorney's Fees Pursuant to Chapter 542A of the Texas Insurance Code (the "Attorney's Fees Motion"). *See* ECF No. 8. On August 22, 2022, Plaintiff Hippodrome filed its Response to the Attorney's Fees Motion. *See* ECF No. 9. On August 29, 2022, Defendant Central filed its Reply in support of the Attorney's Fees Motion. *See* ECF No. 10. After considering the pleadings, supporting evidence, and applicable legal authorities, the undersigned **RECOMMENDS** that Judge Albright **DENY** the Attorney's Fee Motion (ECF No. 8).

## I. BACKGROUND

This is a first party insurance dispute between Plaintiff Hippodrome, an insured, and Defendant Central, an insurer. Plaintiff Hippodrome is the owner of certain real and personal property located at 724 Austin Avenue, Waco, Texas 76701, including the historic Waco Hippodrome Theater (the "Property").

In 2020, Defendant Central issued insurance policy to Plaintiff, Policy No. CLP 9660250, (the "Policy") generally insuring the Property and Plaintiff's business operations with coverage dates between November 4, 2020 and November 4, 2021.

In February 2021, historic winter storms (the "Winter Storm Event") swept through Texas causing low temperatures, power outages and frozen pipes. Beginning on or about February 15, 2021 and culminating on February 18, 2021, multiple pipes burst in the Waco Hippodrome Building causing widespread flooding throughout the facility due to the Winter Storm Event, and resulting in catastrophic damage to the historic building and occupying businesses.

Shortly following the February 2021 Winter Storm Event, Hippodrome provided Central with notice of an insurance claim on the Policy for the damages related to the Winter Storm Event and offered Central the opportunity to inspect the Property. Thereafter, Central and/or its agents inspected the Property on at least two occasions, but the Parties were thereafter unable to resolve the insurance claim related to the Winter Storm Event.

On or about October 5, 2021, Plaintiff Hippodrome filed a lawsuit against, among others, Defendant Central in Texas state court. Also on October 5, 2021, Plaintiff sent a detailed demand letter to Central with notice of its claims (the "October 5, 2021 Demand Letter"), referring to Sections 541.154 and 542A of the Texas Insurance Code and Section 17.01 of the

Texas Business & Commerce Code. Thereafter, on November 5, 2021, Defendant Central removed the First Action to the United States District Court for the Western District of Texas – Waco Division, where the case was assigned Civil Action No. 6:21-CV-01140-ADA-JCM (the "First Action").

On November 9, 2021, Defendant Central filed a Motion to Preclude Attorney's Fees and Plea in Abatement in the First Action, alleging that Hippodrome had not provided Central sixty-one (61) days presuit notice as required under TEX. INS. CODE § 542A.003.

Subsequently, on November 10, 2021 and before Plaintiff Hippodrome could file any response, Defendant Central filed a Motion to Withdraw its Motion to Preclude Attorney's Fees and Plea in Abatement in the First Action, alleging that Central's Motion was "***filed inadvertently*** and does not meet the requirements of LR CV-7."[1]

On November 17, 2021, the Court entered a Text Order in the First Action Granting Central's Motion to Withdraw its Motion to Preclude Attorney's Fees and Plea in Abatement without prejudice for refiling the same.

Thereafter, on November 18, 2021, the Parties entered an agreement through counsel, termed a Rule 11 Agreement, wherein the Parties agreed to, among other things, the following:

- The Parties agreed to file a joint dismissal of the First Action without prejudice;

- Hippodrome agreed not file a second action against Central related to the Winter Storm Event for at least ninety (90) days;

- Hippodrome agreed to permit Central and/or its agents to re-inspect the Property; and

- The Parties agreed not to waive any of their existing rights, claims, or defenses.

---

[1] Defendant Central initially filed a "Notice of Withdraw of its Motion to Preclude Attorney's Fees and Plea in Abatement" in the First Action, but was informed by the Court that a Motion to Withdraw (and proposed Order) would need to be filed. As a result, Defendant filed its Motion to Withdraw its Motion to Preclude Attorney's Fees and Plea in Abatement, requesting that the Court grant Defendant permission to withdraw its pending Motion.

3

*See* ECF Nos. 8 (Exhibits B-5), 9 (Exhibit B).

On November 19, 2021, the Parties filed a Joint Stipulation of Dismissal of the First Action, stating "**Pursuant to Federal Rule of Civil Procedure 41(a)(1)(A)(ii), Plaintiff and Defendants hereby voluntarily dismiss the above action *without prejudice* for refiling the same.**"

After the First Action was voluntarily dismissed, Central and/or its agents re-inspected Plaintiff's real and personal property on at least two (2) occasions, with one of the inspection lasting over eight (8) hours. *See* ECF No. 9-3 (Exhibit C).  However, the Parties disputed whether additional inspections were necessary or required under the Texas Insurance Code, and therefore, were unable to resolve their respective disputes.

On April 1, 2022, Plaintiff Hippodrome filed a new action against, among others, Defendant Central related to the Winter Storm Event, which was assigned Civil Action No. 6:22-CV-349 (the "Second Action" or "this Action" or the "present lawsuit").  *See* ECF No. 1.  The Second Action was filed one hundred seventy-seven (177) days after Plaintiff Hippodrome's October 5, 2021 Demand Letter to Central and after Central had conducted at least two additional inspections of the Property.  *Compare* ECF No. 1 and ECF Nos. 8-1 (Exhibit A), 9-1 (Exhibit A).

On April 6, 2022, the United States District Judge Alan Albright issued an Internal Docket Management Order which referred the Second Action to the undersigned for determination and/or recommendation.  *See* ECF No. 6.

On July 20, 2022, Defendant Central filed its Original Answer and Affirmative Defenses to the Second Action.  *See* ECF No. 7.

On August 8, 2022, Central filed its Attorney's Fee Motion in the Second Action, alleging that Hippodrome had not provided Central sixty-one (61) days presuit notice in the Second Action as required under TEX. INS. CODE § 542A.003.[2]  *See* ECF No. 8.  In connection with the Attorney's Fee Motion, Central provided, among other things, evidence in the form of an affidavit establishing that Hippodrome provided statutory presuit notice to Central on October 5, 2021 pursuant to TEX. INS. CODE §§ 541.154, 542A and TEX. BUS. & COMM. CODE § 17.01, et seq.  *See id.* (Exhibit A).

On August 22, 2022, Hippodrome filed its Response to Central's Motion to Preclude Attorney's Fees (the "Response").  *See* ECF No. 9.  In the Response, Hippodrome also presented evidence that a presuit demand and notice of claim satisfying TEX. INS. CODE § 542A.003 was provided to Central on October 5, 2021 *and* that the Second Action made subject of the Motion was filed on April 1, 2022, one hundred seventy-seven (177) days later.  *See id.*; 9-1; 9-2 (Exhibits A, B).  Hippodrome also offered evidence demonstrating that during the one hundred seventy-seven (177) days, Central inspected the Property at least two times, with one inspection lasting over eight (8) hours.  *See* ECF No. 9-3 (Exhibit C).

On August 29, 2022, Central filed its Reply in support of its Motion to Preclude Attorney's Fees (the "Reply").  *See* ECF No. 10.  In its Reply, Central attempted to address arguments and authorities cited by Hippodrome in its Response, but did not offer any additional evidence in support of the Motion.  *See id.*  Also in its Reply, Central clarified that "**Central Mutual is requesting that the Court enter an order that Waco Hippodrome is precluded from recovering attorney's fees in this action**," not some other actions.  *See id.* (¶6, p.4)(emphasis added).

---

[2] Unlike the First Action, Defendant Central did not file a Plea In Abatement in the Second Action in connection with its Motion to Preclude Attorney's Fees.  *See* ECF No. 8.

On November 14, 2022, the Parties announced appearances in Court and made oral arguments in support of their respective positions on the Motion. No additional evidence was presented by either party at the hearing on the Motion.

## II. LEGAL STANDARDS

### A. Presuit Notice Standard under Chapter 542A of the Texas Insurance Code

Chapter 542A of the Texas Insurance Code generally applies to actions regarding first-party insurance claims arising from alleged damage to covered property caused by "forces of nature," such as "a flood, a tornado, lightning, a hurricane, hail, wind, a snowstorm, or a rainstorm." *See* TEX. INS. CODE § 542A.001(2). Where Chapter 542A of the Texas Insurance Code is applicable, Chapter 542A generally applies to any claim against an insurer, including those for breach of contract, fraud, breach of a common law duty, violations of Texas Insurance Code Chapters 541 and 542, and violations of the Texas Deceptive Trade Practices Act. *See* TEX. INS. CODE § 542A.002(a).

Section 542A.003 of the Texas Insurance Code contains a presuit notice provision requiring a claimant seeking damages against an insurer to give written notice "not later than the 61st day before the date a claimant files an action…" *See* TEX. INS. CODE § 542A.003(a). The presuit notice required by Section 542A.003 must generally include (among other information) a statement of facts or omissions giving rise to the claim, the amount alleged to be owed as damages, and the amount of reasonable and necessary attorney's fees incurred as of the date of the notice. *See* TEX. INS. CODE § 542A.003(b).

Where Section 542A.003's presuit notice requirement is not met, the Texas Insurance Code provides that the claimant's attorney fees incurred after the lawsuit is filed may be precluded:

> (d) If a defendant in an action to which this chapter applies pleads and proves that the defendant was entitled to but was not given a presuit notice stating the specific amount alleged to be owed by the insurer under Section 542A.003(b)(2) at least 61 days before the date the action was filed by the claimant, the court may not award to the claimant any attorney's fees incurred after the date the defendant files the pleading with the court. A pleading under this subsection must be filed not later than the 30th day after the date the defendant files an original answer in the court in which the action is pending.

*See* TEX. INS. CODE § 542A.007(d). Importantly, Section 542A.007 places the burden of pleading and proof squarely upon the defendant seeking the preclusion of plaintiff's recovery of attorney's fees. *See id.*

The purpose of the Texas Insurance Code's presuit notice requirement, like similar presuit notice requirements found in other consumer statutes, is to "discourage litigation and encourage settlements of consumer complaints." *Hines v. Hash*, 843 S.W.2d 464, 469 (Tex. 1992) (quoting *Jim Walter Homes, Inc. v. Valencia*, 690 S.W.2d 239, 242 (Tex. 1985)). In short, presuit notice provides the opportunity to limit damage exposure through an offer of settlement. *See In re Behr*, 2006 WL 468001, at *2 (Tex. App.—San Antonio Mar. 1, 2006).

Likewise, Section 542A.005 provides that a defendant may also file a plea in abatement not later than the 30th day after the date the defendant files an answer in the court in which the action is pending if defendant

> (1) did not receive presuit notice complying with Section 542A.003, or
>
> (2) requested under Section 542A.004 but was not provided a reasonable opportunity to inspect, photograph, or evaluate the property that is the subject of the claim.

*See* TEX. INS. CODE § 542A.005(a).

### B. Voluntary Dismissal Standards Under FED. R. CIV. P. 41

The Fifth Circuit recognizes that "as a general rule, motions for voluntary dismissal should be freely granted unless the nonmoving party will suffer some plain legal prejudice other than the mere prospect of a second lawsuit. *Sanchez v. Safeco Ins. of Indiana*, No. 4:17-CV-00892, 2018 WL 4185523, at *1 (E.D. Tex. Aug. 31, 2018)(citing *Elbaor v. Tripath Imaging, Inc.*, 279 F.3d 314, 317 (5th Cir. 2002)). "The primary purpose of Rule 41(a)(2) is to prevent voluntary dismissals which unfairly affect the other side, and to permit the imposition of curative conditions." *Id.* (quotation omitted).

> Courts have found plain legal prejudice when the plaintiff moves to dismiss the case at a late stage of the proceedings after the parties have exerted significant time and effort, the plaintiff seeks to avoid an imminent adverse ruling, or if dismissal would cause the defendant to be stripped of an otherwise available defense if the case were to be re-filed.

*Diallo v. Celestica Corp.*, 2013 WL 4525728, at *2 (N.D. Tex. 2013) (citing *In re FEMA Trailer Formaldahyde Prod. Liab. Litig.*, 628 F.3d 157, 162-63 (5th Cir. 2010); *Hartford Acc. & Indem. Co. v. Costa Lines Cargo Servs., Inc.*, 903 F.2d 352, 360 (5th Cir. 1990)).

The voluntary dismissal of a lawsuit under FED. R. CIV. P. 41 places a plaintiff "in a legal position as if he [plaintiff] had never brought the first suit." *Yesh Music v. Lakewood Church,* 727 F.3d 356, 359 (5th Cir.2013) (quoting *Harvey Specialty & Supply, Inc.,* 434 F.3d at 324). Importantly, following a Rule 41 dismissal, the plaintiff suffers no impairment beyond his fee for filing. *Id.* Federal courts have uniformly held that "the effect of a voluntary dismissal without prejudice pursuant to Rule 41(a) is to render the proceedings a nullity and leave the parties as if the action had never been brought." *See, e.g., Thompson v. Greyhound Lines, Inc.,* 574 Fed. Appx. 407, 409 (5th Cir. 2014); *Bonneville Associates, Ltd. P'ship v. Barram,* 165 F.3d 1360, 1364 (Fed. Cir. 1999) (internal citations, quotation marks, and alterations omitted); *Beck v. Caterpillar Inc.,* 50 F.3d 405, 407 (7th Cir.1995) ("[T]hat suit was voluntarily dismissed

8

pursuant to FED. R. CIV. P. 41(a), and is treated as if it had never been filed."); *Harbor Ins. Co. v. Essman,* 918 F.2d 734, 737 n. 3 (8th Cir. 1990); *Dade Cnty. v. Rohr Indus., Inc.,* 826 F.2d 983, 989 (11th Cir. 1987). As a result, the plaintiff is permitted to return later to the dismissing court or other courts to assert the same or similar claims "without restriction." *Lakewood Church,* 727 F.3d at 359.

### III.   ANALYSIS

The Court should **DENY** Central's request to preclude the recovery of attorney's fees because Central has not met its burden under TEX. INS. CODE § 542A.003(b) of proving that Central was not given at least sixty-one (61) days presuit notice prior to the filing of the present lawsuit.

### A.   Central Offers No Evidence that Central Received Presuit Notice under Section 542A.003 less than 61 Days Prior to this Action being Filed

In order to prevail in its Attorney's Fee Motion, Central has the burden to "prove that the defendant [Central] was entitled to but was not given a presuit notice stating the specific amount alleged to be owed by the insurer under Section 542A.003(b)(2) at least 61 days before the date the action was filed by the claimant [Hippodrome]." *See* TEX. INS. CODE § 542A.007(d).

In this case, it is undisputed that Hippodrome sent Central a presuit notice pursuant to Section 542A.003(a) and 542A.007(d) by at least October 5, 2021. *See* ECF Nos. 8-1 (Exhibit A), 9-1 & 9-2 (Exhibit A, B). It is undisputed that Hippodrome's October 5, 2021 demand and notice letter was sent to, and received by, Defendant Central and intended to satisfy Section 542A.003's presuit notice requirement. *Id.* It is also undisputed that the Second Action, in which the Attorney's Fee Motion is pending, was filed on April 1, 2022. *See* ECF Nos. 1, 8. Thus, the undisputed evidence demonstrates that Hippodrome provided Central, the insurer, at least one hundred seventy-seven (177) days between the date of its October 5, 2021 presuit

notice letter and the date the Second Action was filed, in compliance with TEX. INS. CODE §§ 542A.003. *See* ECF Nos. 1, 8.

The underlying purpose of the presuit demand letter and statutorily required sixty-one day waiting period in Chapter 542A is, in part, to trigger several statutory rights of the insurer, including (1) the right to request to inspect, photograph, or evaluate the property that is the subject of the claim with 30 days of receipt of a 542A presuit demand letter, and (2) the right to "elect to accept whatever liability an agent might have to the claimant for the agent's acts or omissions related to the claim." *See* TEX. INS. CODE §§ 542A.004, .006. But here, in addition to the one hundred seventy-seven (177) days between the date of the October 5, 2021 presuit notice letter and the filing of the Second Action, Hippodrome offered uncontested evidence that Central was given at least four opportunities to inspect the Property, including two such inspections between the date of the presuit notice letter and filing of the Second Action. *See* ECF No. 9-3 (Exhibit C); *see also* ECF No. 8-2 & 8-8 (Exhibit B-5) (stating that Central shall be permitted to inspect the Property). Although Chapter 542A also provides the insurer the right to file a "plea in abatement" so that the insurer may have an opportunity to inspect the subject property, Central did not file a plea in abatement in the present Action presumably because the purpose of the statute's pursuit demand requirement (i.e. the opportunity to inspect) had been fulfilled. Thus, not only has Hippodrome complied with the letter of Chapter 542A's presuit notice requirement, Hippodrome also appears to have satisfied the underlying purpose of Chapter 542A's presuit notice requirement by permitting Central multiple opportunities to inspect the Property.

      **B.**      **Central Offers No Evidence that Plaintiff's Presuit Notice was Defective**

Central has presented no evidence that Hippodrome's presuit notice letter was defective in such manner as to support the Attorney's Fee Motion. Under Section 542A.003, the claimant's presuit notice must include (1) a statement of the acts or omissions giving rise to the

10

claim, (2) the specific amount alleged to be owed by the insurer, and (3) the amount of reasonable and necessary attorney's fees. *See* TEX. INS. CODE § 542A.003(b). In this case, Central offers no evidence or argument that Hippodrome's October 5, 2021 presuit notice letter failed to satisfy the requirements set forth in TEX. INS. CODE § 542A.003(b), relying exclusively on the argument that Hippodrome's presuit demand letter was untimely. *See generally* ECF Nos. 8, 10. Although Central was unwilling during oral argument to concede that Hippodrome's presuit notice letter satisfied the requirements of TEX. INS. CODE § 542A.003(b), Central failed to point to any specific deficiency in the form or specificity of Hippodrome's October 5, 2021 demand and, more importantly, offered no evidence of any deficiency in the form of the presuit notice letter. *See generally* ECF Nos. 8, 10. Under Chapter 542A, the burden of proof falls squarely on Central. Without offering any legal authority or evidence the Hippodrome's October 5, 2021 letter failed to satisfy Chapter 542A's specific presuit notice requirements, Section 542.003(b) cannot serve as a basis for granting Central's Attorney's Fee Motion.

      **C.    Hippodrome's Filing of the First Action cannot Serve as Evidence in Support of Central's Attorney's Fee Motion in the Second Action**

Central argues that its Attorney's Fee Motion filed in the Second Action should be granted because Hippodrome's October 5, 2021 presuit notice letter was sent on the same day Hippodrome filed the First Action against Central. More specifically, Central contends that by failing to provide sixty-one (61) days presuit notice in the First Action, Hippodrome is precluded from recovering attorney's fees in all future actions, including the Second Action. This argument unpersuasive for several reasons.

          1.    <u>Central's Argument is Inconsistent with the Plain Language of Chapter 542A</u>

Central's argument is not supported by the plain language of Chapter 542A or any case law. Chapter 542A frequently uses the term, "**the action,**" when describing the parties rights and

11

responsibilities, including with respect to the recovery (or preclusion) of attorney's fees. Chapter 542A use of the term, "**the action**," is not consistent with Central's attempt to use evidence of the First Action to support its Attorney's Fee Motion in the Second Action. Although Chapter 542A does not expressly define "**the action**," reading the language as a whole, the statute's frequent reference to "**the action**" must necessarily refer to the pending lawsuit, not any prior (or subsequent) lawsuits.  For example, Section 542A.007 provides that the court shall award the "full amount of reasonable and necessary attorney's fees supported at trial… and determined by the trier of fact to have been incurred by the claimant in bringing '**the action**'." *See* TEX. INS. CODE § 542A.007(b).  When Section 542A.007(b) charges the trier of fact with determining reasonable and necessary attorney's fees in "**the action**," the most reasonable meaning is those attorney' fees associated with bringing present lawsuit, not prior (or subsequent) lawsuits.  Likewise, Section 542A.007 also provides that in order to prevail on a motion to preclude attorney's fees, the defendant must plead and prove the presuit notice was not provided by the claimant at least sixty-one (61) days before "**the action**" was filed by the claimant.  *See* TEX. INS. CODE § 542A.007(d).  Further, Section 542A.007 provides that the motion to preclude attorney's fees must not be filed later than the 30th day after the defendant files its original answer in "**the action**" that is pending.  *Id.*  If Section 542A.007's reference to "**the action**" were interpreted to mean to a prior action (i.e. the First Action in this case), as suggested by Central, then Central's Motion to Preclude Attorney's Fees in the Second Action would have been untimely filed.³

---

³ Central's Original Answer in the First Action was filed on October 29, 2021.  Central's Motion to Preclude Attorney's Fees in the Second Action was filed on August 8, 2022, nearly ten (10) months later.  Therefore, if "the action" referred to the First Action, Central's pending Motion to Preclude Attorney's Fees would not have been filed within thirty (30) days of the filing of Central's Original Answer to "the action."

Similarly, Chapter 542A also uses the term, "**the action,**" when describing the defendant's right to file a "plea in abatement not later than the 30th day after the date the person files an original answer in the court in which '**the action**' is pending…" *See* TEX. INS. CODE § 542A.005. Where Section 542A.005 gives a defendant the right to file a plea in abatement in "**the action**," interpreting "**the action**" as referring to prior (or subsequent) lawsuits would be illogical. Indeed, if "**the action**" referred to prior (or subsequent) lawsuits, Section 542A.005's plea in abatement procedure would be nullified in its entirety. For this and related reasons, when reading Chapter 542A as a whole, "**the action**" necessarily must refer to the current lawsuit in which the defendant filed its motion to preclude attorney's fees, not any prior (or subsequent) lawsuits.

        2. <u>Central's Argument Ignores the Effect of the Voluntary Dismissal of the First Action Under Fed. R. Civ. P. 41</u>

It is undisputed that the Parties filed a Joint Motion to Dismiss the First Action under FED. R. CIV. P. 41 and that the Court granted the Joint Dismissal, dismissing the First Action without prejudice. The Fifth Circuit recognizes that "as a general rule, motions for voluntary dismissal should be freely granted unless the non-moving party will suffer some plain legal prejudice other than the mere prospect of a second lawsuit." *Sanchez v. Safeco Ins. of Indiana,* 2018 WL 4185523 *1 (U.S. Dist. Court E.D. of Texas) (citing *Elbaor v. Tripath Imaging, Inc.,* 279 F.3d 314, 317 (5th Cir. 2002). The primary purpose of Rule 41(a)(2) is to "prevent voluntary dismissals which unfairly affect the other side, and to permit the imposition of curative conditions." *Id.* Courts have found plain legal prejudice where the plaintiff moves to dismiss the case at a late stage of the proceedings after the parties have exerted significant time and effort, the plaintiff seeks to avoid an imminent adverse ruling, or if dismissal would cause the defendant to be stripped of an otherwise available defense if the case were to be re-filed. *In re FEMA*

13

*Trailer Formaldahyde Prod. Liab. Litig.*, 628 F.3d 157, 162-63 (5th Cir. 2010); *Hartford Acc. & Indem. Co. v. Costa Lines Cargo Servs., Inc.*, 903 F.2d 352, 360 (5th Cir. 1990). Here, however, no legal prejudice can be found. The First Action was dismissed in the earliest stage of the proceedings and there were no pending motions or imminent adverse rulings in the First Action at the time of dismissal.[4] Furthermore, as a participant in the filing of the "Joint" Motion for Dismissal under FED. R. CIV. P. 41, Central cannot now argue that the Motion for Dismissal unknowingly or unfairly stripped Central of any rights or defenses or was otherwise improperly granted by the Court. In short, Central (and Hippodrome) moved to dismiss the First Action, and therefore, Central cannot now claim to be unfairly prejudiced by the same.

Central's attempt to use the filing of the First Action as evidence in support of its Attorney's Fees Motion in the Second Action ignores well-established case law on the effect of a voluntarily dismissal. The voluntary dismissal of a lawsuit under FED. R. CIV. P. 41 places a plaintiff "in a legal position as if he [plaintiff] had never brought the first suit." *Yesh Music v. Lakewood Church,* 727 F.3d 356, 359 (5th Cir. 2013) (quoting *Harvey Specialty & Supply, Inc.,* 434 F.3d at 324). Federal courts have uniformly held that "the effect of a voluntary dismissal without prejudice pursuant to Rule 41(a) is to render the proceedings a nullity and leave the parties as if the action had never been brought." *See, e.g., Thompson v. Greyhound Lines, Inc.,* 574 Fed. Appx. 407, 409 (5th Cir. 2014); *Bonneville Associates, Ltd. P'ship v. Barram,* 165 F.3d 1360, 1364 (Fed. Cir. 1999); *Beck v. Caterpillar Inc.,* 50 F.3d 405, 407 (7th Cir. 1995) ("[T]hat suit was voluntarily dismissed pursuant to FED. R. CIV. P. 41(a), and is treated as if it had never been filed.")*; Harbor Ins. Co. v. Essman,* 918 F.2d 734, 737 n. 3 (8th Cir. 1990); *Dade Cnty. v. Rohr Indus., Inc.,* 826 F.2d 983, 989 (11th Cir. 1987). In this case, the effect of the voluntary dismissal of the First Action was to "render the proceedings a nullity and

---

[4] Defendant Central had already withdrawn its Motion to Preclude Attorney's Fees and Plea in Abatement.

leave the parties as if the action had never been brought." *Id.* Thus, Central cannot, on the one hand, agree to voluntarily dismiss the First Action under FED. R. CIV. P. 41, but then argue that the filing and existence of the First Action precludes the recovery of attorney's fees in the Second Action. Accepting Central's argument would require the Court to ignore well established law concerning the effect of a voluntary dismissal.

       3. <u>Central's Argument Assumes Facts Concerning the First Action which were Never Established or Proven in the First Action</u>

Central's argument concerning the First Action also assumes, without meeting its' burden of proof, that Hippodrome failed to satisfy Chapter 542A's presuit notice requirement with respect to the First Action. While Central did file a Motion to Preclude Attorney's Fees and Plea in Abatement in the First Action, Central also filed a Motion to Withdraw its Motion to Preclude Attorney's Fees and Plea in Abatement in the First Action *one day later*, representing to the Court that its Motion to Preclude Attorney's Fees had been "inadvertently filed." As a result of the withdrawal of Central's Motion in the First Action, Central Hippodrome was never given the opportunity to respond or offer competing evidence in the First Action and the issue was never determined prior to dismissal of the First Action under FED. R. CIV. P. 41. Now, Hippodrome has been presented with a Motion to Preclude Attorney's Fees in the Second Action, to which Hippodrome has responded with competent evidence demonstrating compliance with Chapter 542A with respect to the Second Action. Whether Hippodrome complied with Chapter 542A in the First Action was never properly briefed or brought before the Court, and therefore, Central may not now assume in the Second Action that the issue was ever decided.

15

####          4.   The Parties' Rule 11 Agreement did Not Alter their Substantive Rights

Finally, Central argues that, prior to filing the Joint Dismissal of the First Action, the Parties entered into a Rule 11 Agreement wherein Central preserved its right to assert the Motion to Preclude Attorney's Fees and Plea in Abatement in future actions.  Notably, at the time the Rule 11 Agreement was entered, Central's Motion to Preclude Attorney's Fees and Plea in Abatement in the First Action had been withdrawn and no motions were pending in the First Action. Nonetheless, in Central's view, the entry of the Rule 11 Agreement in the First Action preserved Central's right to file a Motion to Preclude Attorney's Fees and Plea in Abatement in the Second Action.  In reviewing the entire Rule 11 Agreement, however, it is clear that the preservation of rights in Parties Rule 11 Agreement applies equally to both Parties, stating, in relevant part, that "**nothing herein shall waive or limit *the parties'* rights, claims or defenses under the Policy, statutory law, or common law…**"  *See* ECF No. 8 & 8-8 (Exhibit B-5).  In short, the Rule 11 Agreement did not operate to waive or limit any of the rights or defenses of either party.  As a result, Central cannot now argue that the Rule 11 Agreement in the First Action places either party in a more advantageous position in the Second Lawsuit, alters the plain language of Chapter 542A, or otherwise obviates the well-established law on voluntary dismissals under FED. R. CIV. P. 41.  Clearly, the Rule 11 Agreement is not meant to change the operation of Chapter 542A or the Parties' respective rights under the same. Furthermore, the Rule 11 Agreement specifically addresses and preserves the claims and assertions of the Parties with respect to the "Lawsuit," defined in the Rule 11 Agreement as Cause No. 6:21-CV-01140-ADA-JCM (i.e. the First Action).  Thus, in the Rule 11, the Parties simply agreed to preserve their rights in the First Action, not to create new ones or to otherwise set aside well-established law in future action.

### D.      CONCLUSION

In the present case, Central has not met its evidentiary burden to show that Hippodrome failed to give presuit notice as required by Section 542A.003 of the Texas Insurance Code. The undisputed evidence presented to the Court is that Hippodrome provided presuit notice as early as October 5, 2021 and that the present lawsuit was filed on April 1, 2022, amounting to one hundred seventy-seven (177) days between the time presuit notice was given and the filing of the present suit. Thus, the undersigned **RECOMMENDS** that Judge Albright **DENY** Central's Motion to Preclude Attorney's Fees (ECF No. 8).

A copy of these findings, conclusions, and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions, and recommendation must file specific written objections within fourteen (14) days after being served with a copy of the same. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b)(2). To be specific, an objection must identify the particular finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions, and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Auto. Ass'n,* 79 F.3d 1415, 1417 (5th Cir. 1996)(en banc).

**SIGNED** this 14th day of December, 2022.

DEREK T. GILLILAND
UNITED STATES MAGISTRATE JUDGE